UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 19 CR 321 |
| v. ) | |
| ) | Honorable Matthew F. Kennelly |
| ADAN CASARRUBIAS SALGADO ) | |

**GOVERNMENT'S MOTION TO ALLOW
SPEAKER IDENTIFICATIONS ON BLACKBERRY MESSENGER EXHIBITS**

The UNITED STATES OF AMERICA, by its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, hereby moves *in limine* for leave to include the identities of the speakers on the government's Blackberry Messenger exhibits, and in support states as follows:

**I.    BACKGROUND**

Defendant Adan Casarrubias Salgado is charged with narcotics conspiracy, substantive narcotics offenses, and money laundering. The charges pertain to defendant's work with others (while defendant was located in Mexico) to send buses with heroin loaded in hidden compartments to Chicago for distribution, and then to send the resulting cash drug proceeds from Chicago back down to Mexico—likewise hidden in the buses.

DEA's investigation into defendant and his coconspirators was based in large part on the use of Title III wiretaps on Blackberry Messenger devices, including devices used by the conspiracy's Chicago-based manager—Cooperating Witness 1. As will be explained at trial, Blackberry Messenger (which is commonly called "BBM"

for short) was a text-based communications system used by many people in the 2000s and 2010s. Instead of having a phone number, individuals using BBM were assigned a PIN (personal identification number), which was a series of letters and numbers. For example, the device that defendant used during the charged conspiracy had the PIN 2824C71E. As this example makes clear, the PINs that Blackberry assigned devices were very user <u>un</u>friendly because they were a seemingly random series of letter and numbers. As a result, Blackberry allowed its users to create their own custom screennames that they would use while communicating with others, and which others would see when communicating with them. In this case, defendant used the screenname "Star" and Cooperating Witness 1 used the screenname "Comando," among others.

The government expects the DEA case agent to explain that when the DEA was intercepting the BBMs in this case, the DEA received a number of different types of data in near real time from Blackberry, including: (1) the message content, (2) the sender's PIN, (3) the screenname for the sender, (4) the receiver's PIN, (5) the screenname for the receiver, and (6) the date and time of the message (set forth in UTC).

\* \* \*

In order to assist the jury's review and comprehension of the Title III evidence, the government is creating exhibits setting forth the intercepted Blackberry communications that the government intends to introduce at trial. The government

2

will authenticate these exhibits through the testimony of the DEA case agent (who participated in their interception), but also through the testimony of Cooperating Witness 1—who personally participated in every BBM conversation the government will seek to admit. The government's BBM exhibits will aid the jury by organizing the intercepted data to make it more readable, and also by including English translations of the intercepted messages, which were all in Spanish originally.[1]

A portion of a proposed exhibit is copied below as an illustration (with Cooperating Witness 1's name redacted for now):

---

[1] If no stipulation is reached, the government will lay the foundation for the Spanish-to-English translations by calling the translator as a witness.

DATE: June 16, 2014
SOURCE: 333F1B34 (███████)
PARTICIPANTS: ███████   (333F1B34 – "Comando")
Adan Casarrubias Salgado   (2824C71E – "Star")

| No. | DATE/TIME (CDT) | FROM | MESSAGE | |
|---|---|---|---|---|
| 1 | 6/16/14 1:07 PM | Star | Primo te voy a pasar un # para que recojan 125 y los eches junto con lo que tienes | Cousin I'm going to give you a # so that you all pick up 125 and you throw it in together with what you have |
| 2 | 6/16/14 1:08 PM | Comando | Pero seri para el ke yegue el viernes oy ya seva ya metimos | But it would be for the one that is arriving on Friday today is leaving already we already put in |
| 3 | 6/16/14 1:08 PM | Comando | Mandemelo | Send it to me |
| 4 | 6/16/14 1:09 PM | Star | Para el viernes por hay te voy a mandar otros 200 mas de 100. En 100 | For Friday around then I'm going to send you another 200 more of 100. In 100 |
| 5 | 6/16/14 1:10 PM | Comando | Mandemelo para recojerlos de una ves | Send it to me to pick them up while we're at it |

Almost all of the information set forth in this exhibit comes from the intercept itself, namely, the date, time,[2] the screennames associated with each message ("Comando" and "Star"), the Spanish message, the PINs of the speakers (333F1B34 and 2824C71E), and the PIN the wiretap was on (333F1B34). Beyond that original data provided by Blackberry, the government has added line numbers for ease of

---

[2] As noted, the original date and time were provided in UTC format. In the government's exhibits, in order to assist the jury's comprehension of the events presented—most of which happened in the Chicago area—the time has been adjusted in the exhibits (by subtracting five hours) in order to display the time in Chicago Daylight Time.

reference, and Spanish translations so the messages can be understood by the jury. The government has also identified the speakers by their true name (here, Cooperating Witness 1's true name (currently redacted) and Adan Casarrubias Salgado). This information was not part of the intercept from Blackberry. Instead, these identifications will be based on the testimony of Cooperating Witness 1, who personally participated in each of these conversations and who knew all the speakers.[3]

## II. ARGUMENT

The government seeks a pretrial ruling that—subject to laying the foundation as discussed above—the government be permitted to include identification of the speakers/users on the transcripts (e.g., "Adan Casarrubias Salgado" in the example above). It is common practice in this district for transcripts used during trial to include the names of the alleged speakers, and the Seventh Circuit has affirmed this practice. *See, e.g.*, *United States v. Breland*, 356 F.3d 787, 795 (7th Cir. 2003) (affirming the district court's decision to admit transcripts of recorded calls, including with the alleged speakers' names included on the transcripts).[4]

---

[3] Cooperating Witness 1's identifications are corroborated by some of the messages in which different individuals are referred to by the first name. In one exchange, Cooperating Witness 1 tells a third party, "Let me give you adan's ping and ask him to tell you where correctly," and then Cooperating Witness 1 sends, "2824c71" and "of Adan."

[4] In *Breland*, the government laid the foundation for the identifications by having an agent familiar with the speakers' voices testify that they were the speakers on the calls. Here, with regard to the Blackberry messages, voice identification is not possible because they were text messages. But nothing about *Breland* or the cases upon which it relies suggests there is something special about voice identification testimony. Instead, the clear takeaway is that the government must provide evidence that the alleged speaker is the speaker, which the government will do in this case, as described above.

5

The government will make clear through the case agent that these name identifications were added to the exhibits by the government, and not provided by Blackberry as part of the interception. And to further avoid any confusion, the government would have no objection to the Court giving a limiting instruction during the presentation of evidence and/or before deliberations. Such an instruction could be along the lines of:

> Government Exhibits 6001 through and including 6120 contain the content of certain intercepted Blackberry Messenger messages admitted into evidence. These exhibits are evidence. These exhibits, however, also contain the government's written identification of the participants, which are added to these exhibits, as a demonstrative aid. The government's written identification of participants are not themselves evidence or proof of any facts, and you can accept or reject these written identifications. It is for you the jury to decide, based on all of the evidence admitted at trial, if the government's identifications are accurate in whole, in part, or not at all.

Here, the government requests that it be permitted to include these demonstrative aids in order to assist the jury. Essentially, the identifications summarize the evidence the government will be presenting on the identification of the speakers. The labels will help the jury process this evidence, apply it to the BBM exhibits, and more easily follow along. This is necessary because the BBM PINs and screennames can get very confusing very fast.

At the same time, the defense will have the full ability to challenge that underlying evidence and to argue that the exhibits are misidentified. And the government would have no objection to the Court providing an instruction along the lines of the one above whenever necessary to ensure the jury does not get confused or

misapprehend the source of the identification labels.

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that this motion be granted and the government be given leave to include the identity of the speakers in its Blackberry Messenger exhibits.

                                              Respectfully submitted,

                                              MORRIS PASQUAL
                                              Acting United States Attorney

By:   */s/ Andrew C. Erskine*
       ANDREW C. ERSKINE
       MICHELLE PARTHUM
       Assistant United States Attorney
       219 South Dearborn Street
       Chicago, Illinois 60604