**FILED**
2/23/2024
MMA

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ADAN CASARRUBIAS SALGADO

No. 19 CR 321

Judge Matthew F. Kennelly

## PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant ADAN CASARRUBIAS SALGADO, and his attorneys, JOHN BENSON and PABLO DECASTRO, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rules 11(c)(1)(A) and 11(c)(1)(C), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with conspiring to possess with intent to distribute and distribute a controlled substance, namely, 1 kilogram or more of heroin, in violation of Title 21, United States Code, Section 846 (Count One), possessing with intent to distribute a controlled substance, namely, 1 kilogram or more of heroin, in violation of Title 21, United States Code, Section 841(a)(1) (Counts Two, Five, and Nine), distributing a controlled substance, namely, 1 kilogram or more of heroin, in violation of Title 21, United States Code, Section 841(a)(1) (Counts Six, Seven, Eight, Ten, and Eleven), and money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i) (Counts Three and Four).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count One, which charges defendant with conspiring to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 846; and Count Three, which charges defendant with money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).   In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Three of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

2

a.    With respect to Count One of the indictment:

Beginning no later than in or about April 2014, and continuing until in or about June 2014, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant ADAN CASARRUBIAS SALGADO did conspire with Individual A and with others to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 846.

More specifically, beginning sometime prior to April 2014, CASARRUBIAS SALGADO began working with others, including his brother, Co-conspirator A, to important heroin into the United States from Mexico, transport it to Chicago and other hub cities, and distribute the drugs to customers. During this time, CASARRUBIAS SALGADO, Co-conspirator A, and others conducted these drug-trafficking activities as part of the drug-trafficking organization, "Guerreros Unidos," which was based in the Mexican state of Guerrero.

One of the ways CASARRUBIAS SALGADO, Co-conspirator A, and others imported and transported controlled substances in the United States was to hide kilograms of the drugs inside hidden compartments within passenger buses. Beginning in or about 2012, Individual A assisted this drug-trafficking activity by managing operations in the Chicago area, including maintaining stash warehouses,

3

receiving and unloading drug-laden buses, distributing the drugs to wholesale customers, receiving cash drug proceeds, and packing the proceeds into passenger buses for transport to Mexico.

CASARRUBIAS SALGADO acknowledges that between in or about 2012 and April 2014, Co-conspirator A was principally responsible for communicating with and directing Individual A regarding the above-described drug-trafficking and money-laundering activities. In or about late-April 2014, Co-conspirator A was arrested in Mexico. As a result, CASARRUBIAS SALGADO and his other brothers took over leadership of the Guerreros Unidos, and CASARRUBIAS SALGADO took over primary responsibility for communicating with and directing Individual A regarding the Guerrero Unidos's drug-trafficking and money-laundering activity in Chicago.

Between in or about April 2014 and June 2014, CASARRUBIAS SALGADO caused at least two buses containing hidden shipments of heroin to be sent from Mexico to Individual A in the Chicago area. CASARRUBIAS SALGADO acknowledges that on June 1, 2014, the first bus shipment arrived containing approximately 26 kilograms of heroin, and it was unloaded inside one of the warehouses used by the Guerreros Unidos. On June 2, 2014, the second bus shipment arrived containing approximately 26 kilograms of heroin, and it too was unloaded inside one of the warehouses used by the Guerreros Unidos. In relation to these two shipments of heroin, CASARRUBIAS SALGADO directed Individual A to distribute the drugs to customers. CASARRUBIAS SALGADO did so by providing Individual A

4

a verbal pass phrase, the phone number for the customer's courier, and the quantity of kilograms of heroin to be distributed. CASARRUBIAS SALGADO acknowledges that Individual A did as CASARRUBIAS SALGADO directed. In addition, in June 2014, CASARRUBIAS SALGADO directed Individual A—on behalf of Co-conspirator A—to meet with couriers for customers in order to receive cash drug proceeds totaling at least approximately $900,000.

CASARRUBIAS SALGADO acknowledges that the amount of drugs that constitutes relevant conduct attributable to him, that was reasonably foreseeable to him, and for which he is responsible, is in excess of 90 kilograms of heroin. CASARRUBIAS SALGADO further acknowledges he was aware that security for the Guerreros Unidos was at times armed with firearms.

b.     With respect to Count Three of the indictment:

On or about June 4, 2014, at approximately 12:06 p.m., at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant ADAN CASARRUBIAS SALGADO did transport, transmit, and transfer monetary instruments and funds, that is, approximately $300,000 in United States Currency, from a place in the United States, that is Chicago, Illinois, to a place outside the United States, that is Mexico, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise

the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, that is, the felonious buying, selling, and otherwise dealing in a controlled substance, in violation of Title 18, United States Code, Sections 1956(a)(2)(B)(i) and 2.

More specifically, on or about June 2, 2014, CASARRUBIAS SALGADO directed Individual A—on behalf of Co-conspirator A—to receive $600,000 in cash drug proceeds from a customer in order to ship the proceeds to CASARRUBIAS SALGADO in Mexico hidden within a passenger bus. CASARRUBIAS SALGADO acknowledges that Individual A and other Chicago-based workers did as CASARRUBIAS SALGADO instructed on June 4, 2014—receiving a total of approximately $600,000 in two increments of $300,000 in an alley in the Chicago area, which funds were subsequently shipped to CASARRUBIAS SALGADO—on behalf of Co-conspirator A—in Mexico via passenger bus. CASARRUBIAS SALGADO acknowledges that at the time of this receipt and transfer of these drug proceeds from the customer in the United States to CASARRUBIAS SALGADO in Mexico, CASARRUBIAS SALGADO knew the transfer was designed at least in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds.

## **Maximum Statutory Penalties**

7.      Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.  Count One carries a maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count One also carries a maximum fine of $10,000,000. Defendant further understands that with respect to Count One the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

b.  Count Three carries a maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $500,000, or twice the property involved, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

c.  Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

d.  Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment, and the minimum sentence is 10 years' imprisonment. In addition, defendant is subject to a total maximum fine of $10,500,000, a period of supervised release, and special assessments totaling $200.

**Sentencing Guidelines Calculations**

8.  Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider

that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2023 Guidelines Manual.

b.     **Offense Level Calculations**.

<u>Count One</u>

i.     The base offense level is 38, pursuant to Guideline § 2D1.1(a)(5) and 2D1.1(c)(1) because the amount of heroin involved in the offense of

8

conviction for which defendant is accountable or which was reasonably foreseeable to defendant was no less than 90 kilograms of heroin.

    ii.     Pursuant to Guideline § 2D1.1(b)(1), the offense level is increased by two levels because a dangerous weapon (a firearm) was possessed.

    iii.     Pursuant to Guideline § 2D1.1(b)(12), the offense level is increased by two levels because defendant maintained a premise for the purpose of manufacturing or distributing a controlled substance.

    iv.     Two levels are added to the offense level, pursuant to § 2D1.1(b)(16)(C), because the defendant was directly involved in the importation of a controlled substance.

    v.     Four levels are added to the offense level, pursuant to Guideline § 3B1.1(a), because the defendant was an organizer or leader of a criminal activity that involved five or more participants.

<u>Count Three</u>

    vi.     The base offense level for Count Three is 38, pursuant to Guideline § 2S1.1(a)(1), because defendant committed the underlying offense from which the laundered funds were derived, as provided in subparagraph (b)(i) above.

    vii.     Two levels are added to the offense level, pursuant to Guideline § 2S1.1(b)(2)(B), because the defendant was convicted under 18 U.S.C. § 1956.

viii.    Four levels are added to the offense level, pursuant to Guideline § 3B1.1(a), because the defendant was an organizer or leader of a criminal activity that involved five or more participants.

### Grouping

ix.    Pursuant to Application Note 6 to Guideline § 2S1.1, Counts One and Three are grouped pursuant to Guideline § 3D1.2(c). Pursuant to Guideline § 3D1.3(a), the offense level applicable to the group is the highest offense level for the counts comprising the group. Therefore, the offense level is 48.

### Acceptance of Responsibility

x.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xi.    Pursuant to Guidelines Chapter 5, Part A, Application Note 2, an offense level of more than 43 is to be treated as an offense level of 43.

c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts

now known to the government, defendant's criminal history points equal 3 and defendant's criminal history category is II:

      i.     On or about October 12, 1999, defendant was convicted in the United States District Court for the Southern District of Texas of aiding and abetting in conducting a financial transaction affecting interstate commerce which involved the proceeds of a specified unlawful activity. On or about March 6, 2000, defendant was sentenced to 21 months of imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

      d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 43 which, when combined with the anticipated criminal history category of II, results in an anticipated advisory sentencing guideline sentence of life imprisonment, in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 10 years' imprisonment.

      e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation

11

and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.     This Agreement will be governed, in part, by Fed. R. Crim. P. 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court on Count One shall include a term of imprisonment in the custody of the Bureau of Prisons of between 120 and 240 months. Both parties shall be free to recommend any sentence on Count One within the agreed range of 120 to 240 months. Other than the agreed range of incarceration, the parties have agreed that the Court remains free to

impose the sentence on Count One it deems appropriate. If the Court accepts and imposes a sentence within the agreed range of incarceration set forth above, defendant may not withdraw this plea as a matter of right under Fed. R. Crim. P. 11(d) and (e). If, however, the Court refuses to impose a sentence within the agreed range of incarceration set forth herein, thereby rejecting this Agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this Agreement.

12.    Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

13.    After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

**Forfeiture**

14.    Defendant understands that, by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property involved in the offense.

15.    Defendant agrees to the entry of a personal money judgment in the amount of $900,000, which represents funds involved in the offense. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment he will be ordered to pay.

13

16.    Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

17.    Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

18.    Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## <u>Acknowledgments and Waivers Regarding Plea of Guilty</u>

### Nature of Agreement

19.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 19 CR 321.

20.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or

14

release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

21.     Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

a.      **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be

16

drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission..

22.    Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

23.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

24.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

18

25. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

26. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including one or more offenses to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory.

19

Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

## Conclusion

28. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

29. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in

accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

30.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

31.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

32.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE:  2/23/24

ERIKA CSICSILA  Digitally signed by ERIKA CSICSILA
Date: 2024.02.23 09:21:49 -06'00'

Signed by Erika L. Csicsila on behalf of
MORRIS PASQUAL
Acting United States Attorney

ANDREW C. ERSKINE
MICHELLE PARTHUM
Assistant U.S. Attorneys

ADAN CASARRUBIAS SALGADO
Defendant

JOHN BENSON
PABLO DECASTRO
Attorneys for Defendant

22