UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 321 |
| v. | |
| ADAN CASARRUBIAS SALGADO | Judge Matthew F. Kennelly |

**GOVERNMENT'S SENTENCING MEMORANDUM**

For the reasons that follow, the government believes a sentence of 210 months' imprisonment would be sufficient, but not greater than necessary, to accomplish the goals of sentencing.

## I. Preliminary Advisory Sentencing Guidelines Calculation

The government agrees with the criminal-history and offense-level calculations set forth in the Presentence Investigation Report submitted by the United States Probation Office. The defendant's total offense level is 43 and his criminal history category is II, resulting in an advisory Guidelines sentence of life imprisonment.

## II. The Defendant Should Receive a Sentence of 210 months in Prison

A sentence of 210 months' imprisonment is sufficient, but not greater than necessary, to comply with the principles set forth in 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense

Beginning sometime prior to April 2014, defendant began working with others, including his brother, Co-conspirator A, to import heroin into the United States from Mexico, transport it to Chicago and other hub cities, and distribute the drugs to

customers. During this time, defendant, Co-conspirator A, and others conducted these drug-trafficking activities as part of the drug-trafficking organization, "Guerreros Unidos," which was based in the Mexican state of Guerrero.

One of the ways defendant, Co-conspirator A, and others imported and transported controlled substances in the United States was to hide kilograms of the drugs inside hidden compartments within passenger buses. Beginning in or about 2012, Individual A assisted this drug-trafficking activity by managing operations in the Chicago area, including maintaining stash warehouses, receiving and unloading drug-laden buses, distributing the drugs to wholesale customers, receiving cash drug proceeds, and packing the proceeds into passenger buses for transport to Mexico.

Defendant acknowledged that between in or about 2012 and April 2014, Co-conspirator A was principally responsible for communicating with and directing Individual A regarding the above-described drug-trafficking and money-laundering activities. In or about late-April 2014, Co-conspirator A was arrested in Mexico. As a result, defendant and his other brothers took over leadership of the Guerreros Unidos, and defendant took over primary responsibility for communicating with and directing Individual A regarding the Guerrero Unidos's drug-trafficking and money-laundering activity in Chicago.

Between in or about April 2014 and June 2014, defendant caused at least two buses containing hidden shipments of heroin to be sent from Mexico to Individual A in the Chicago area. Defendant acknowledged that on June 1, 2014, the first bus

2

shipment arrived containing approximately 26 kilograms of heroin, and it was unloaded inside one of the warehouses used by the Guerreros Unidos. On June 2, 2014, the second bus shipment arrived containing approximately 26 kilograms of heroin, and it too was unloaded inside one of the warehouses used by the Guerreros Unidos. In relation to these two shipments of heroin, defendant directed Individual A to distribute the drugs to customers. Defendant did so by providing Individual A a verbal pass phrase, the phone number for the customer's courier, and the quantity of kilograms of heroin to be distributed. Defendant acknowledges that Individual A did as defendant directed. In addition, in June 2014, defendant directed Individual A— on behalf of Co-conspirator A—to meet with couriers for customers in order to receive cash drug proceeds totaling at least approximately $900,000.

Defendant acknowledged that the amount of drugs that constitutes relevant conduct attributable to him, that was reasonably foreseeable to him, and for which he is responsible, is in excess of 90 kilograms of heroin. Defendant further acknowledged he was aware that security for the Guerreros Unidos was at times armed with firearms.

### B. History and Characteristics of Defendant

Defendant's history and characteristics present both aggravation and mitigation.

In aggravation, this is not defendant's first federal criminal conviction in the United States. Defendant was previously convicted in 1999 of what appears to be a

3

money-laundering-type offense, for which he was sentenced to 21 months imprisonment. PSR ¶ 46. As detailed in the PSR, the offense involved defendant's participation in a "drug smuggling organization"—involving large quantities of marijuana and cocaine—with routes to Chicago. Notwithstanding this prior conviction and sentence, defendant returned to criminal conduct, in particular criminal conduct involving drug smuggling organizations sending large quantities of drugs into the United States.

In mitigation, defendant alleges he suffered abuse following his arrest in Mexico, and he also suffers from a number of physical ailments and maladies.

## C. General Deterrence

It remains the exception for Mexico-based drug traffickers to be brought into federal court in the United States and made to answer the charges against them. While some such traffickers are arrested and extradited to the U.S., many are not. Accordingly, as a matter of general deterrence, the Court should impose a significant sentence on this defendant who has admitted to sending large quantities of narcotics into the United States—and its communities—from the relative safety of another country. Drug traffickers abroad must know that if they are brought to this country to stand charges, they will face stiff penalties upon conviction.

## D. Need to Avoid Unwarranted Sentence Disparities

Defendant points to the different sentences handed down in the related matter 14 CR 705, all of which were under ten years. Defendant suggests these sentences

4

support a sentence for him at the bottom of the agreed range. It bears noting, however, that defendant was higher in the organization than any of these individuals. These other defendants were the couriers and local managers who followed the orders of, first, defendant's brother, and then of defendant. Second, at least one of those individuals (Figueroa) received a motion under 5K1.1., which defendant is not receiving. Third, it's also notable that—as set forth in defendant's sentencing memo— the defendants in the related case received below-Guidelines sentences that were roughly 50% of the low end. By that metric, the government's proposed recommendation in this case is in line with those other sentences, taking into account defendant's more aggravating role. Finally, the most culpable person from that case— Pablo Vega—has not yet been sentenced, and he faces a minimum of 10 years.

**E. Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

This is a serious offense and defendant's sentence should reflect that. Heroin is a dangerous drug that destroys lives and communities. Defendant sought to profit from that misery.

## III. Government's Proposed Terms of Supervised Release

Consistent with the Seventh Circuit's guidance in *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), the government recommends the imposition of a term of supervised release of five years. In order to promote the sentencing objectives of deterring recidivism, protecting the public, and assisting in the defendant's

5

rehabilitation and reintegration into society, the government recommends that the five-year term of supervised release include the conditions set forth below:

### A. Mandatory Conditions

The following mandatory conditions would serve to afford adequate deterrence to criminal conduct, protect the public, and assist in defendant's rehabilitation:

- Not commit another federal, state or local offense;

- Not unlawfully possess a controlled substance;

- Submit to the collection of a DNA sample from the defendant at the direction of the U.S. Probation Office if the collection of such a sample is authorized pursuant to 42 U.S.C. § 14135a(a); and

- Refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on supervised release and at least two periodic tests thereafter, up to 104 periodic tests for use of a controlled substance during each year of supervised release.

### B. Discretionary Conditions of Supervision

The following conditions would serve to facilitate supervision by the probation officer, thus assisting in encouraging the defendant's compliance with the law and deterring the defendant from future crimes:

- Remain within the jurisdiction where the defendant is being supervised, unless granted permission to leave by the court or a probation officer (Discretionary Condition #14);

6

- Report to the probation officer as directed by the probation officer (Discretionary Condition #15);

- Permit the probation officer to visit the defendant at home, work, at a community service location, or other reasonable location specified by a probation officer, at any reasonable time, and to confiscate any contraband in plain view of the officer (Discretionary Condition #16);

- Notify a probation officer promptly, within 72 hours, of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer (Discretionary Condition #17);

- Notify a probation officer within 72 hours of being arrested or questioned by a law enforcement officer (Discretionary Condition #18);

- Not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the Court (Special Condition #11).

The following conditions would support the defendant's rehabilitation and reintegration into the community and would help ensure that the defendant is engaged in lawful pursuits:

- Seek, and work conscientiously at, lawful employment or pursue conscientiously a course of study or vocational training that will equip the defendant for employment (Discretionary Condition #4);

7

- Refrain from knowingly meeting or communicating with any person whom the defendant knows to be engaged, or planning to be engaged, in criminal activity (Discretionary Condition #6);

- Refrain from excessive use of alcohol, and from any use of a narcotics drug (Discretionary Condition #7);

- Refrain from possessing a firearm, destructive device, or other dangerous weapon (Discretionary Condition #8);

- You shall be surrendered to a duly authorized official of the Homeland Security Department for a determination on the issue of deportability by the appropriate authority in accordance with the laws under the Immigration and Nationality Act and the established implementing regulations. If ordered deported, you shall not reenter the United States without obtaining, in advance, the express written consent of the Attorney General or the Secretary of the Department of Homeland Security. (Discretionary Condition #21)

- If unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, perform at least 20 hours of community service per week at the direction of the U.S. Probation Office until gainfully employed (Special Condition #3).

- If the probation officer determines that you pose a risk to another person (including an organization or members of the community), the probation officer may require you to tell the person about the risk, and you must comply with that instruction. Such notification could include advising the person about your record of arrests and convictions and substance use. The probation officer may contact the person and confirm that you have told the person about the risk. (Special Condition #13).

## IV. Conclusion

For the foregoing reasons, the government requests that the court sentence Adan Casarrubias Salgado to 210 months' imprisonment.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: /s/ *Andrew C. Erskine*
ANDREW C. ERSKINE
MICHELLE PARTHUM
Assistant U.S. Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-1875

Dated: February 26, 2025

9